# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **SHIRLEY McBRAYER FLOOD, as** ) | |
| **Personal Representative of the Estate** ) | |
| **of DAVID DANIEL McBRAYER,** ) | |
| **deceased,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:16-CV-1832-VEH** |
| ) | |
| **CITY OF JACKSONVILLE,** ) | |
| **ALABAMA; and DALE MURPHY** ) | |
| **EDWARDS,** ) | |
| ) | |
| **Defendants.** ) | |

---

## MEMORANDUM OPINION AND ORDER

This is a civil action filed by the Plaintiff, Shirley McBrayer Flood, as personal representative of the estate of David Daniel McBrayer, who is deceased. (Doc. 23). The allegations in the First Amended Complaint arise out of the fatal shooting of McBrayer by Officer Dale Murphy Edwards, a police officer with the City of Jacksonville, Alabama's police department. Only two Defendants remain in this case–the City of Jacksonville, Alabama ("the City") and Officer Edwards. Against the City of Jacksonville, the First Amended Complaint sets out claims for: violation of the Americans with Disabilities Act, 42 U.S.C. §§12111-12213 (the "ADA") (Count One); violation of the Rehabilitation Act, 29 U.S.C. §§ 701-797b (Count Two) (the

"RA"); and "Failure to Train" (Count Three).[1] Against Edwards, the First Amended Complaint alleges a claim for "Wrongful Death." (Count Five)[2].

This case comes before the Court on the Motions To Dismiss filed by Officer Edwards (doc. 30) and the City (doc. 32)[3]. Each motion is filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein Officer Edwards's motion will be **DENIED**, and the City's motion will be **GRANTED in part** and **DENIED in part**.

## I.   STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

---

[1] In its brief in support of its motion, the City asserts that the wrongful death claim in Count Five is also asserted against it. Indeed, that count does state that the Plaintiff "seeks compensatory damages from the City of Jacksonville." (Doc. 23 at 11). It also states that the death of the Plaintiff's decedent was caused by an officer "[a]cting pursuant to [Jacksonville Police Department] policies." (Doc. 23 at 11). Regardless, in her response to the motion, the Plaintiff is clear that only Counts One, Two, and Three are asserted against the City. (Doc. 37 at 4). Accordingly, in order to clear up any confusion, to the extent that Count Five is asserted against the City of Jacksonville, it will be dismissed.

[2] There is no Count "Four" in the First Amended Complaint.

[3] Document 32 is a joint motion filed by both the City and T.L. Thompson, a former Defendant in this case.

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.  ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

The First Amended Complaint sets out the following:

11.    David McBrayer's mental problems became known to the [Jacksonville Police Department ("JPD")] on Saturday, November 8, 2014. On that date, at 5:44 am, David tried to break into the local Dollar

3

General Store. Within the hour, JPD officers . . . confronted him in the store's parking lot in his pajamas and in possession of a hammer. He was arrested for disorderly conduct and held in the Jacksonville City Jail.

12. On Monday, November 10, 2014, an official of the JPD telephoned David's father, David Bradford McBrayer ("Bradford McBrayer"), on his cellphone at work in Atlanta, Georgia. The JPD official stated to Bradford McBrayer that David had a mental problem and needed help. . . . According to the official, JPD had contacted the Calhoun County Health Officer to no avail. The JPD was concerned about releasing David McBrayer on his own; and asked Bradford McBrayer to come to Jacksonville and get medical care for his son.

13. Bradford McBrayer left his home in Atlanta and came to Jacksonville on the same evening on which he received the JPD call. At the Jacksonville City jail, he signed the release papers and picked up his son at approximately 11:00 pm. The releasing officer told Bradford McBrayer that his son needed medical care and should be taken for medical care as soon as possible. Bradford McBrayer talked with his son and took his son to the apartment in Jacksonville. But David would not allow his father to enter the apartment. Instead, Bradford McBrayer spent the night at a local motel.

14. On Tuesday, November 11, 2014, Bradford McBrayer saw his son a few times during the day. Just before lunch, David McBrayer said to his father: "I feel threatened by you." As a result of those short interactions, Bradford McBrayer concluded that his son did indeed have a serious mental problem. He returned to the JPD that afternoon and asked for its assistance in persuading David to get his [sic] the car so that his father could take him home for medical treatment. An official of the JPD gave Bradford McBrayer a number to call when he was ready to leave.

15. Bradford McBrayer last saw his son thorough [sic] the apartment window around 8:30 pm on November 11, 2014, inside the apartment playing video games. Bradford McBrayer went back to his motel room

for the evening, hoping to get medical assistance for his mentally troubled son the following day.

16. Around 9:00pm that night, David McBrayer left his apartment. He bought a pizza, and purchased toys, drinks, candy, and a box cutter from the local Walmart [sic] store.

17. At approximately 10:20 pm on November 11, 2014, someone fired several shots through a car window with a BB gun at the Coliseum Apartments. The owner of the car contacted the JPD.

18. Three JPD Officers, including Defendant Dale Murphy Edwards, arrived at David's apartment shortly thereafter. Two of the officers approached the front of the apartment, and the third officer approached the rear.

19. When an officer knocked on his front door, David then ran out of the rear of the apartment. He ran to his car and picked up the box cutter. As the [sic] he walked away from the car, the officers surrounded him. David kept yelling, "I feel threatened by you." The officers yelled at him several times to put down "the knife." David did not immediately drop the box cutter.

20. Within a minute of having commanded David to drop "the knife," Defendant Dale Murphy Edwards fired five rapid rounds of bullets into David's chest and torso, killing him instantly.

21. Defendant Edwards fatally shot David McBrayer in the medial left chest, in the left chest through the left nipple, in the left lateral chest, and in the left mid to upper back. Each of these was [a] penetrating gunshot wound.

22. Defendant Edwards was acting pursuant to JPD policy on November 14, 2014, when he used deadly force on David McBrayer.

23. Standard police department policy is to use deadly force only where a suspected person poses a significant threat of death or serious bodily

injury to the officer or others.

24. Defendant Edwards and the other JPD officers knew that David was mentally disturbed when they approached him on the night of November 11, 2014; and that he did not pose a significant threat of death or serious bodily injury to them or others.

25. The JPD has no written policies on the handling of mentally disabled citizens during an investigation or arrest.

26. The JPD has by custom and practice adopted a policy known as "the 21-Foot Rule." Under this Rule, whenever a policeman is within twenty-one (21) feet of a person carrying a knife, the policeman is authorized to use deadly force. The policeman need not consider the totality of the surrounding circumstances, the need for using deadly force, the relationship between the need for using force and the amount of force used, or alternatives such as pepper spray or tazers.

(Doc. 23 at 4-8, ¶¶11-26).

## III. THE MOTION TO DISMISS FILED BY THE CITY (DOC. 32).

### A. The Claims Against the City Are Not Barred by the Applicable Statutes of Limitation

The following claims are asserted against the City: violation of the ADA (Count One); violation of the RA (Count Two); and "Failure to Train" (Count Three). The parties agree Ala. Code § 6-2-38(l) provides the applicable two-year statute of limitations as to Counts One and Two. *See*, *Horsley v. Univ. of Alabama*, 564 F. App'x 1006, 1008 (11th Cir. 2014) ("[For] discrimination claims under Title II of the ADA and the [RA] . . . the applicable limitations period is governed by the most

analogous state statute of limitations. In Alabama, where this action was brought, the applicable limitations period is two years.") (citing *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409–10 (11th Cir.1998) and Ala. Code § 6-2-38(l)); *see also,* doc. 33 at 7 and doc. 37 at 2.

Count Three asserts a claim pursuant to 42 U.S.C. § 1983 for "failure to train."[4] "All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). In Alabama, the governing limitations period is two years. *McNair*, 515 F.3d at 1173 (citing Ala.Code § 6–2–38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th

---

[4] As noted previously, there is some disagreement between the Plaintiff and the City as to whether Count Five was brought against the City. Similarly, the City argues that Count Three, which is entitled "Failure to Train," is a state law claim which is due to be dismissed because the "Plaintiff failed to comply with the mandatory provisions of Ala. Code § 11-47-23, requiring her to file a notice of claim within six months of the incident." (Doc. 33 at 19) *(footnote omitted).* Certainly a claim for "failure to train" exists under Alabama law. *See, Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1215 (Ala. 2008) (discussing negligent failure to supervise and train). But no such claim is brought here. In the instant case, Count Three discusses "violation of the constitutions [sic] right not to be subjected to excessive force," "deliberate indifference to the rights" of the Plaintiff, and "excessive force." (Doc. 23 at 10, ¶¶42-44). These are all phrases typically associated with a Constitutional claim made pursuant to 42 U.S.C. § 1983. Further, the First Amended Complaint is clear that "Plaintiff's substantive claims are based on [the ADA], the [RA,] . . . and 42 U.S.C. § 1983." (Doc. 23 at 3, ¶1). Counts One and Two, respectively, make claims under the ADA and the RA. (Doc. 23 at 8-10, ¶¶30-39). In light of the language used in the count, and by process of elimination, Count Three makes a claim pursuant to Section 1983. Further, in her response to the motion, the Plaintiff is clear that Count Three asserts a claim under 42 U.S.C. § 1983. In order the clear up any uncertainty, however, any potential <u>state</u> law claim asserted against the City in Count Three will be dismissed.

Cir.1989) (en banc)). Again, the parties agree that Alabama's two year statute of limitations is applicable. (Doc. 33 at 7; doc. 37 at 2).

There is no dispute that McBrayer died on November 11, 2014, and that this lawsuit was filed exactly two years later, on November 11, 2016. While it would seem at first glance that the claims against the City were timely filed, recall that these federal claims borrowed <u>Alabama</u> statutes of limitations. The City insists that this Court must <u>also</u> borrow the Alabama rule that a case is not "commenced" unless the Complaint is timely filed <u>along with the bona fide intention of having it immediately served</u>. *See, Daniel v. Moye*, No. 1140819, 2016 WL 6649138, at *15 (Ala. Nov. 10, 2016); *ENT Assocs. of Alabama, P.A. v. Hoke*, No. 1141396, 2016 WL 4585742, at *6 (Ala. Sept. 2, 2016)*; Ex parte Courtyard Citiflats, LLC*, 191 So. 3d 787, 797 (Ala. 2015) ("We have explained that, in addition to being filed in a timely manner, the filing of a complaint must be done in a manner that demonstrates a bona fide intent, at the time of filing, to proceed with this action.") (internal quotations and citations omitted) *cert. denied sub nom. Arrington v. Courtyard Citiflats*, LLC, 136 S. Ct. 1194, 194 L. Ed. 2d 204 (2016). The City insists that the Plaintiff had no bona fide intent to immediately serve the Complaint because: (1) after filing the Complaint, the Plaintiff "failed for the next 77 days to pay the required filing fee <u>and</u> ask this Court to issue summonses for her to serve on [the City] and the other defendants;" (doc. 41

at 2) and (2) after paying the required filing fee and asking for and obtaining the required Court-issued summonses, the Plaintiff did not perfect service on the City until February 28, 2017–109 days after filing the Complaint.

The Plaintiff ignores the City's allegations regarding when it paid the filing fee, asked for summonses, and served the Complaint. Instead, the Plaintiff writes:

> This is a federal case, filed in federal district court, not a case filed in the Circuit Court of Calhoun County, Alabama. As a result, the Federal Rules of Civil Procedure indisputably apply with full force. That bedrock principle was established nearly three-quarters of a century ago in the landmark case, *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947).
>
> The City's argument about conflating requirements of service with requirements of commencing the lawsuit, (Doc. 33 at 7), is unavailing. Rule 3 of the Federal Rules of Civil Procedure is rather simple and straightforward. Entitled "Commencing an Action," it plainly states: "A civil action is *commenced* by filing a complaint with the court." (Emphasis added). Therefore, under FED. R. CIV. P. 3, the lawsuit against the City was timely filed *and* commenced.
>
> Regarding service, FED. R. CIV. P. 4(m) provides a "Time Limit for Service." It states that, "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Although the City disputes that it was served within 90 days, its argument fails regardless because the Uniform Initial Order issued by the Court in this case states the following in Section I. E.:
>
> > Any defendant who has not been served with a summons and complaint within 120 days after the filing of the complaint (or within 120 days after the party was added to

> the action) *may be dismissed without further order of the court unless* prior to such time the party on whose behalf such service is required shows good cause why service has not been perfected.

Doc. 2 at 5 (emphasis in original).

A plain reading of the Court's Order conclusively establishes that Plaintiff had 120 days from the date of filing the original Complaint within which to serve the City with a summons and complaint, and Plaintiff complied. (Doc. 18). Therefore, the myriad of Alabama cases cited by Edwards [sic][5] in support of his motion is indubitably inapposite and must be disregarded.

Likewise, the "tolling" argument of Edwards [sic] is similarly inapt and is nothing more than a straw person. The concept widely misses the mark, since the Complaint was filed on precisely the second anniversary of the death of Plaintiff's intestate, David McBrayer. Plaintiff satisfied all federal rules and standards applicable to an action filed in this Court.

In sum, neither the Federal Rules of Civil Procedure nor the Uniform Initial Order leaves room for ambiguity about *bona fide* intent or other inapt standards advanced by the City. Plaintiff commenced the lawsuit within the period of limitations and served Defendant City of Jacksonville with the summons and Complaint within 120 days after the filing of the Complaint.

(Doc. 37 at 3-4) (footnote omitted).

*Hickman*, the only authority cited by the Plaintiff, does not answer the question

before this Court. Rather, *Hickman* concerned "the extent to which a party may

---

[5] This section of the Plaintiff's brief is copied, nearly word for word, from the brief she filed in opposition to Officer Edwards's motion to dismiss. That is likely the reason for the inclusion of the references to "Edwards."

inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen." *Hickman*, 329 U.S. at 497. Thus, *Hickman* had nothing to do with statutes of limitations or whether the Federal Rules of Civil Procedure or state common law rules determine <u>when</u> an action based on state law "commences." Two other Supreme Court cases, *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980) and *West v. Conrail*, 481 U.S. 35, 39, 107 S. Ct. 1538, 1541, 95 L. Ed. 2d 32 (1987), <u>do</u> provide substantial guidance in this area, however.[6]

In *Walker*, the Court set out the following fact:

> Petitioner is a resident of Oklahoma, and respondent is a foreign corporation having its principal place of business in a State other than Oklahoma. Since there was diversity of citizenship, petitioner brought suit in the United States District Court for the Western District of Oklahoma. The complaint was filed on August 19, 1977. Although summons was issued that same day, service of process was not made on respondent's authorized service agent until December 1, 1977. On January 5, 1978, respondent filed a motion to dismiss the complaint on the ground that the action was barred by the applicable Oklahoma statute of limitations. Although the complaint had been filed within the 2-year statute of limitations, Okla.Stat., Tit. 12, § 95 (1971), state law does not deem the action "commenced" for purposes of the statute of limitations until service of the summons on the defendant, Okla.Stat., Tit. 12, § 97 (1971). If the complaint is filed within the limitations period, however, the action is deemed to have commenced from that date of filing if the plaintiff serves the defendant within 60 days, even though that service may occur outside the limitations period. Ibid. In this case, service was

---

[6] Neither case was cited by the parties.

not effectuated until long after this 60-day period had expired. Petitioner in his reply brief to the motion to dismiss admitted that his case would be foreclosed in state court, but he argued that Rule 3 of the Federal Rules of Civil Procedure governs the manner in which an action is commenced in federal court for all purposes, including the tolling of the state statute of limitations.

*Walker*, 446 U.S. at 741–43 (footnotes omitted). The Court then held that

Rule 3 simply states that "[a] civil action is commenced by filing a complaint with the court." There is no indication that the Rule was intended to toll a state statute of limitations, much less that it purported to displace state tolling rules for purposes of state statutes of limitations. In our view, in diversity actions, Rule 3 governs the date from which various timing requirements of the Federal Rules begin to run, but does not affect state statutes of limitations.

*Id*. at 750–51 (footnotes omitted). It then affirmed the judgment of the Tenth Circuit, and the district court, both of which had found the action to be barred by the Oklahoma statute of limitations.

In *West,* the plaintiffs alleged that their union and its representative had breached the federal duty of fair representation under the federal Labor Management Relations Act. The Court noted that

Congress did not enact a federal statute of limitations that is expressly applicable to federal duty of fair representation claims [but] we filled that gap in federal law by deciding that the 6-month period prescribed in § 10(b) should be applied to [such] claims under § 301 of the Labor Management Relations Act[.] Section 10(b) authorizes the National Labor Relations Board (NLRB) to issue a complaint when a charging party asserts that an employer or a union has engaged in an unfair labor practice. The statute does not impose any time limit on the issuance of

such a complaint, but it does provide that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made. . .." . . . [T]he Court of Appeals read this statutory language to require in hybrid suits of this kind that both the filing and the service of the complaint be made within the 6-month period of limitations. We did not, however, intend that result.

*West*, 481 U.S. at 37–38 (footnotes omitted). The Court then explained:

The only gap in federal law that we intended to fill in [out previous cases] was the appropriate limitations period. We did not intend to replace any part of the Federal Rules of Civil Procedure with any part of § 10(b) of the National Labor Relations Act. Rule 3 of the Federal Rules of Civil Procedure provides that a civil action is commenced by filing a complaint with the court, and Rule 4 governs the procedure for effecting service and the period within which service must be made. The clerk of the district court must "forthwith issue a summons and deliver the summons to the plaintiff or the plaintiff's attorney, who shall be responsible for prompt service of the summons and a copy of the complaint." [FED. R. CIV. P.] 4(a). Service must normally be made within 120 days. See Rule 4(j). Although we have not expressly so held before, we now hold that when the underlying cause of action is based on federal law and the absence of an express federal statute of limitations makes it necessary to borrow a limitations period from another statute, the action is not barred if it has been "commenced" in compliance with Rule 3 within the borrowed period. See 4 C. Wright & A. Miller, Federal Practice and Procedure § 1056 (1969). We decline respondents' invitation to require that when a federal court borrows a statute of limitations to apply to a federal cause of action, the statute of limitation's provisions for service must necessarily also be followed, even when the borrowed statute is to be applied in a context somewhat different from the one in which those procedural rules originated.

*Id.* at 3 (emphasis added).

In *dicta*, the Court also wrote the following:

> When the underlying cause of action is based on state law, and federal jurisdiction is based on diversity of citizenship, state law not only provides the appropriate period of limitations but also determines whether service must be effected within that period. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752–753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). Respect for the State's substantive decision that actual service is a component of the policies underlying the statute of limitations requires that the service rule in a diversity suit "be considered part and parcel of the statute of limitations." *Id.*, at 752, 100 S.Ct. at, 1978 (footnote omitted). <u>This requirement, naturally, does not apply to federal-question cases</u>. Indeed, *Walker* expressly declined to "address the role of Rule 3 as a tolling provision for a statute of limitations, whether set by federal law or borrowed from state law, if the cause of action is based on federal law." *Id.*, at 751, n. 11, 100 S.Ct. at, 1985, n. 11.

*Id.* at 39, n. 4 (emphasis added). As the Ninth Circuit has observed, "*Walker* and *West* do not, however, answer the precise question in this case: Does Rule 3 tell us when a suit commences where (like *West*) the cause of action is federal, but where (unlike *West*) the statute of limitations is borrowed from state rather than federal law?" *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002).

While this Court has found no Eleventh Circuit case which answers this question[7], the First, Fourth, Fifth, Seventh, and Ninth Circuits all agree that Rule 3

---

[7] Shortly after the Supreme Court published *West*, the Eleventh Circuit Court of Appeals decided *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 823 F.2d 466, 467 (11th Cir. 1987), a case in which the American Postal Workers Union ("the Union"), brought suit to vacate arbitration awards rendered pursuant to a collective bargaining agreement with the United States Postal Service ("the Postal Service"). In *American Postal Workers*, the Eleventh Circuit held that the act under which the suit was brought, the Postal Reorganization Act of 1970, did not contain

of the Federal Rules of Civil Procedure should <u>only</u> be used to determine when an

action based on <u>federal</u> law and filed in federal court commences.[8] *See*, *Sain*, 309

F.3d at 1138 ("Rule 3 provides the tolling rule for a borrowed state statute of

limitations in § 1983 actions. That is, we hold that a § 1983 action is commenced in

federal district court for purposes of the statute of limitations when the complaint is

filed."); *McIntosh v. Antonino,* 71 F.3d 29, 36 (1st Cir. 1995) ("In the wake of *West*,

federal courts consistently have held that questions concerning the commencement

of a Section 1983 action in a federal court are governed by FED. R. CIV. P. 3."); *Diaz*

*v. Shallbetter*, 984 F.2d 850, 853 (7th Cir. 1993) ("When federal law borrows a state

period of limitations, the suit is commenced by filing the complaint, and service is

---

a statute of limitations, but held that it was appropriate to "borrow" the three month limitations period in the United States Arbitration Act, 9 U.S.C. §§1-16 (the "USAA"). Section 12 of the USAA also provided that a "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C.A. § 12. The Eleventh Circuit first noted that

> the Court, in *West* held that an action is timely when "commenced" within the meaning of FED.R.CIV.P. 3, i.e., the complaint was filed, within the limitations period, so long as proper service was effected within 120 days as provided in Fed.R.Civ.P. 4(j).

> This holding dictates the same analysis in this case. . . . Therefore, if the plaintiff filed its complaint to "commence" the action within three months (which it did), and effected proper service within 120 days of filing (which it did), then the actions are timely.

*Am. Postal Workers Union*, 823 F.2d at 476–77 (footnotes omitted). Unfortunately, this holding does not answer the precise question before <u>this</u> Court.

[8] Again, the parties cite none of the cases which follow.

effective if achieved within the time allowed by Rule 4.") (citing *West*, 481 U.S. at 39, n. 4); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th Cir. 1991) (citing *inter alia West* and Fed. R. Civ. P. 3 for the proposition that, in federal question cases, as opposed to diversity cases, the state statute of limitations, but not its tolling provisions, are applied and the action is timely as long as the complaint is deemed filed within the limitations period); *Martin v. Demma*, 831 F.2d 69, 71 (5th Cir. 1987) ("In federal cases, filing a complaint with the court commences an action and tolls the applicable statute of limitations.") (citing *West* and Fed.R.Civ.P. 3); *Sentry Corp. v. Harris*, 802 F.2d 229, 233 (7th Cir. 1986) (claim under 42 U.S.C. § 1983 adopts state statute of limitations but Rule 3, not state law, governs when action is "commenced"). The Court finds these decisions, which are consistent with note 4 of the Supreme Court's opinion in *West*, persuasive, and sees no reason not to apply the same reasoning to the ADA and RA claims against the City, which also "borrow" a two-year Alabama statute of limitations.

The City cites *Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 2001, 104 L. Ed. 2d 582 (1989), for the proposition that "limitations periods in § 1983 suits are to be determined by reference to the appropriate 'state statute of limitations and the coordinate tolling rules.' " (Doc. 33 at 9 and n. 7); *see also*, *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S. Ct. 1938, 1943, 85 L. Ed. 2d 254 (1985) ("[T]he limitations

period, and closely related questions of tolling and application, are to be governed by state law."); *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 483, 100 S. Ct. 1790, 1794, 64 L. Ed. 2d 440 (1980) (the court is "obligated not only to apply the analogous New York statute of limitations to respondent's federal constitutional claims, but also to apply the New York rule for tolling that statute of limitations"). The Court notes that the Alabama Rule at issue in this case is not truly "a closely related question of tolling." In other words, it has nothing to do with whether some action (or inaction) tolls the statute of limitations in a Section 1983 action. As noted by the Seventh Circuit in *Sentry Corp.*:

> courts and commentators have generally distinguished between those provisions relating to traditional tolling doctrines (fraudulent concealment, minority, other legal disabilities) and commencement provisions. With regard to the former, the traditional rule has been that state law controls; with regard to the latter, federal law controls.

*Sentry Corp.*, 802 F.2d at 237 (citations omitted). In light of the cases cited above, the Court is persuaded that the Seventh Circuit's analysis is correct. The Court holds that the Alabama rule, which requires a complaint to be filed in a manner that demonstrates a bona fide intent, at the time of filing, to proceed with the action, is not applicable in an action filed in federal court based on federal law.

That does not end the matter, however, as the City argues that the Plaintiff has violated Rule 4(m) of the Federal Rules of Civil Procedure because it was not served

"within 90 days after the complaint [was] filed." FED. R. CIV. P. 4(m). (Doc. 33 at 8).

Rule 4(m) actually states that

> if a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant **or** order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court <u>must</u> extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m) (emphasis added). Thus, Rule 4(m) does not <u>require</u> dismissal (because the Court can extend the time for service).[9] The City has cited no authority to the contrary. The claims against the City, as pled, are all federal claims and are timely. The City's motion to dismiss those claims as barred by the applicable statute of limitations will be denied.

### B. The Plaintiff Fails To Plausibly Plead Claims Under the ADA or the RA (Counts One and Two)

In Count One, the Plaintiff alleges that the City violated the ADA because it "failed to provide a reasonable accommodation for . . . McBrayer." (Doc. 23 at 9, ¶33, 35-36).[10] In Count Two, the Plaintiff alleges that the City violated the Rehabilitation

---

[9] The Court reads the last sentence of the quoted portion of the Rule only as a requirement that the Court <u>must</u> extend the time upon a showing of good cause, not that good cause must be shown for <u>every</u> extension. In order to clear up any confusion, to the extent necessary, and consistent with this Court's Uniform Initial Order, this opinion should be deemed to be an order granting an extension until 120 days after the filing of the Complaint.

[10] The parties argue about whether a "failure to train" claim is cognizable under the ADA, but only APOSTC, which is no longer a Defendant in this case, is charged with a violation of the

Act when it "fail[ed] to reasonably accommodate his mental disability." (Doc. 23 at 10, ¶39). Of course, nowhere does the Plaintiff allege that a reasonable accommodation was requested. *See, Bagwell v. Morgan Cty. Comm'n*, 676 F. App'x 863, 866 (11th Cir. 2017) ("The employer's duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation.") (*citing Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)).[11] For this reason alone, the claims under the ADA and RA are due to be dismissed.

In addition, the First Amended Complaint fails to plead facts which plausibly allege a claim under either the ADA or RA. Very recently, the Eleventh Circuit noted:

> The ADA and the RA prevent public entities and the recipients of federal funding from discriminating against disabled individuals. *See Barnes v. Gorman*, 536 U.S. 181, 184–85, 122 S.Ct. 2097, 2100, 153 L.Ed.2d 230 (2002). To state a claim for compensatory damages under either statute, a private plaintiff must show that the defendant acted "with discriminatory intent." *McCullum v. Orlando Reg. Healthcare Sys., Inc.*, 768 F.3d 1135, 1146–47 (11th Cir. 2014); *see Delano–Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) ("A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional

---

ADA for "failure to train." *See* doc. 23 at 9, ¶¶ 34, 35 ("APOSTC failed to adequately provide for the training of law enforcement officers;" "[a]s a direct cause of the APOSTC's failure to provide adequate training."). Accordingly, the Court will not address those arguments.

[11] Even though *Bagwell* was an ADA case, "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

discrimination."). That requires proof the defendant either intentionally discriminated against the plaintiff or was "deliberately indifferent to his statutory rights." *McCullum*, 768 F.3d at 1147 (quotation marks omitted). "To establish deliberate indifference, a plaintiff must show that the defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood." *Id*. (quotation marks and alteration omitted).

*Boynton v. City of Tallahassee*, 650 F. App'x 654, 658 (11th Cir. 2016) (footnotes omitted). In *Boynton*, the plaintiff, James E. Boynton, sued the City of Tallahassee, Florida after being tazed nine times by a police officer. Boynton, who was a diabetic, but who did not wear a medic alert bracelet, had collapsed in the checkout line of a supermarket and an ambulance was called. While medics in the ambulance were treating the plaintiff, "he did not tell the medics that he was a diabetic, but he did ask them for a candy bar or something sweet." *Boynton*, 650 G. App'x at 656. Eventually, the plaintiff became frightened, tried to leave the ambulance, and a struggle ensued between the plaintiff and the medics.

Eventually, Curtis Norton, a police officer with the City of Tallahassee, was instructed to "proceed to the scene with lights and siren because of a combative patient inside an ambulance." *Id.* When the officer arrived, one of the medics told him she thought the plaintiff might be "on illegal drugs." *Id.* at 656-657. The Eleventh Circuit then noted

Norton entered the ambulance and found Boynton lying on the floor,

wedged between the stretcher and the ambulance wall, clinging to the bottom of the stretcher. Norton told him to get onto the stretcher for treatment. Boynton responded with "slurred words that [Norton] couldn't understand," but he did not move. Norton decided to take Boynton into "protective custody," but he did not tell Boynton that. He hoisted Boynton onto the stretcher, where he lay on his stomach with his arms tucked under his body and his head facing the ambulance door. Norton ordered him to flip onto his back and turn around so that the medics could treat him, but Boynton once again did not move. Norton tried to move Boynton himself, but he was unable to get a solid grip because Boynton repeatedly "tens[ed] his arms and pull[ed] them close to his body." At that point, Norton decided to use his taser as a stun gun to "get control of [Boynton] so that he could be medically treated." He did not give any verbal warning before using his taser.

When Norton tased him, Boynton "flopped" between the stretcher and the ambulance floor. Cameron, who was standing just outside, observed Boynton "screaming," "yelling," "jerking," and "go[ing] limp." According to Cameron, Boynton also said, "Okay, man, okay, man," and "Okay, I'll get up," after Norton first tased him. When Boynton did not move onto the stretcher right away, Norton tased him eight more times—for a total of nine taser shocks cumulatively lasting 49 seconds.

Boynton eventually complied with Norton's order to lie on his back on the stretcher. Norton then holstered his taser and handcuffed Boynton to the stretcher. The medics returned to the ambulance, and Cameron began driving to the hospital while Ellison resumed his assessment of Boynton's condition. He discovered that Boynton's blood sugar was low and administered intravenous dextrose around 1:30 p.m. Boynton was treated and released from the hospital; he was not charged with any crime. He alleges that being tased nine times caused neurological damage to his lumbar spine, resulting in pain and numbness in his right leg.

*Id.* at 657 (footnotes omitted). The Eleventh Circuit affirmed the dismissal of the

Plaintiff's ADA and RA claims against the City, noting:

In his third amended complaint, Boynton asserts that Norton's actions were "intentional and/or deliberately indifferent" to his rights under the ADA and the RA. But he does not allege any factual basis for that conclusion. *See Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010) (explaining that a legal conclusion must be supported by factual allegations to survive a motion to dismiss). Boynton alleges only that Norton should have recognized his erratic behavior as "consistent with [an individual] suffering a diabetic crisis." <u>But that does not suggest Norton actually knew that Boynton was disabled or knew that his actions were substantially likely to violate Boynton's rights under the ADA or the RA.</u> *See,* [*McCullum v. Orlando Reg. Healthcare Sys., Inc.*, 768 F.3d 1135, 1147 (11th Cir. 2014)]. Because he has not alleged any facts showing that Norton acted intentionally or with deliberate indifference, we affirm the dismissal of Boynton's statutory discrimination claims.

*Id.* at 658–59 (emphasis added).[12]

Similarly, in the instant case, although the Plaintiff alleges that "Defendant Edwards and the other JPD officers knew that David was mentally disturbed when they approached him on the night of November 11, 2014" (doc. 23 at 7, ¶24), no <u>facts</u> are pled which plausibly support that allegation.[13]  Further, no facts are alleged which

---

[12] The Plaintiff argues that *Boynton* is distinguishable because it did not involve a "failure to train against the municipality under the ADA and RA as here." (Doc. 37 at 10). However, as shown above, the First Amended Complaint only alleges that the City failed to provide a reasonable accommodation to McBrayer under the ADA and RA. *See* doc. 23 at 9, ¶¶35-36, and doc. 23 at 10, ¶39).  A Plaintiff may not amend her Complaint through argument in a response to a motion to dismiss.  *Huls v. Llabona*, 437 F. App'x 830, 832 (11th Cir. 2011) (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.2004)).  Regardless, the Plaintiff fails to explain why the standard would be any different for failure to train cases under the ADA and RA.

[13] The Plaintiff's bare allegation that "McBrayer's mental problems became known to the JPD on . . . November 8, 2014," and the allegation that "an official of the JPD" told McBrayer's father that McBrayer "had a mental problem," are insufficient to establish that <u>Officer Edwards</u> had this knowledge.

22

establish that Officer Edwards knew that his actions were substantially likely to violate the Plaintiff's rights under the ADA or the RA. Because the Plaintiff has not alleged any facts showing that Officer Edwards acted intentionally or with deliberate indifference, the Plaintiff's claims under the ADA and RA are due to be dismissed.

Further, the vague allegation that McBrayer had "a mental problem," does not suffice to establish that his condition plausibly falls into the category of conditions covered by the ADA or the RA. "To state a claim under Title II of the ADA, a plaintiff must allege . . .that he is a "qualified individual with a disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001). "Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases." *Cash*, 231 F.3d at 1305. Therefore, the Court will examine the two claims together. As noted by the Eleventh Circuit:

> The ADA and the regulations interpreting the Rehabilitation Act both define "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."

*Cash*, 231 F.3d at 1305 (quoting 42 U.S.C. § 12102(2); see 34 C.F.R. § 104.3(j)(1)). Nowhere does the First Amended Complaint allege facts plausibly establishing that McBrayer had, or was regarded as having, any specific mental impairment. Similarly, no facts are pled which plausibly allege that his "mental problems" substantially

limited one or more of his major life activities.[14]  For this reason as well, the claims

under the ADA and RA will be dismissed.[15]

### C. The Section 1983 Claim Against the City for Failure To Train (Count Three) Will Not Be Dismissed

As noted previously[16], the City incorrectly treats Count Three as a claim based

upon Alabama state law for "failure to train," when it is actually a claim made

pursuant to Section 1983. Accordingly, the City makes no real argument that this

claim should be dismissed.[17] The Section 1983 claim in Count Three will not be

dismissed.

---

[14] Indeed the First Amended Complaint alleges that McBrayer was enrolled in college and "pursuing a degree in Computer Science" (doc. 23 at 4, ¶10), which suggests that his condition did not limit him.

[15] The Plaintiff does not seek leave to amend. However, even if she did, this Court notes that the Plaintiff has already amended her complaint once and did not correct the deficiencies in these counts despite the fact that they were pointed out in a previous motion to dismiss. (*See* doc. 15 at 12-15).

[16]*See* note 4, *supra*.

[17] In passing, in a footnote, the City argues:

[T]o the extent that a § 1983 claim is implicated, the [C]omplaint is void of any factual allegations at all showing that at the time of this incident, Edwards was not only an incompetent/unfit police officer due to prior events of excessive force, etc., but that Jacksonville had knowledge of such. Absent factual allegations showing these necessary things, the [C]omplaint fails . . . to plausibly establish a claim for failure to train.

(Doc. 33 at 18, n. 33). The City makes this same argument, essentially word-for-word, in its reply brief. (Doc. 41 at 5-6). This underdeveloped argument fails to set out or explain the standard for holding a municipality liable pursuant to Section 1983.  Nor does it analyze the facts which are pled in light of that standard. Accordingly, the Court rejects this argument.

## IV. THE MOTION TO DISMISS FILED BY EDWARDS (Doc. 30).

As noted previously, only one count in the First Amended Complaint, Count Five, is alleged against Officer Edwards. Count Five alleges an Alabama state law claim for wrongful death. Officer Edwards argues that the claim should be dismissed because it is barred by the applicable statute of limitations. The parties agree that the statute of limitations applicable to this claim is the two year statute of limitations found in Ala. Code §6-5-410(d) which provides that a wrongful death action "must be commenced within two years from and after the death . . .." As with the federal claims, there is no dispute that McBrayer died on November 11, 2014, and that this lawsuit was filed exactly two years later on November 11, 2016.[18] However, Edwards claims that because the Plaintiff "failed to either pay the Clerk the required filing [fee] or provide the Clerk with summonses (to be issued by the Clerk for Flood to serve on the defendants) until January 27, 2017 (Docs. 5), which was 77 days after both the filing of the lawsuit and the expiration of the two-year statute of limitation"

------

[18] In her response to the motion, the Plaintiff writes:

There is unanimity of agreement that Alabama's "catchall" two-year statute of limitations governs this action; and that the Alabama Wrongful Death statute of limitations is two years. Ala. Code § 6-2-38(1); § 6-5-410(d). There is also agreement that the original Complaint in this case was filed on November 11, 2016 – exactly two years after the death of Plaintiff's intestate, David McBrayer.

(Doc. 34 at 2).

(doc. 31 at 5), the action is time-barred. As with the federal claims, this argument is based on Alabama common law which provides a case filed in Alabama is not "commenced" unless the Complaint is timely filed along with the *bona fide* intention of having it immediately served.

Consistent with the discussion of her federal claims, the Plaintiff does not discuss whether the Alabama rule, if applied, would cause her case to be barred by the applicable statute of limitations. Instead, she argues that Rule 3 of the Federal Rules of Civil Procedure, not the Alabama rule, applies to her state law claim. The Plaintiff is incorrect.

As noted previously, state law claims brought in federal court use the state tolling provisions such as the one at issue in this case, not Rule 3. *See*, *Walker*, 446 U.S. at 750–51; *West*, 481 U.S. at 39, n. 4. In *Goldthrip v. DePuy Orthopaedics, Inc.*, 665 F. App'x 808 (11th Cir. 2016), the Eleventh Circuit, citing *Walker*, found an action to be barred by the Alabama statute of limitations because the plaintiffs did not immediately serve or have the intention to serve the defendants. The court wrote:

> In an action based on diversity jurisdiction, state law determines when the action commenced for statute of limitations purposes. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 753, 100 S.Ct. 1978, 1986, 64 L.Ed.2d 659 (1980). We will apply Alabama law to determine if the action commenced before the statute of limitations period had run. In Alabama, a two-year statute of limitations period applies to the claims at issue here, negligence and Alabama Extended Manufacturer's Liability claims.

See ALA. CODE § 6–2–38(1) (1975); *Smith v. Medtronic, Inc.*, 607 So.2d 156, 159 (Ala. 1992). Under Rule 3 of the Alabama Rules of Civil Procedure, an "action is commenced by filing a complaint with the court." ALA. R. CIV. P. 3. However, the filing of the complaint is not the only factor for determining whether the action "commenced" for statute of limitations purposes. *Ex parte E. Ala. Mental Health–Mental Retardation Bd., Inc.*, 939 So.2d 1, 3 (Ala. 2006) ("This Court has held that the filing of a complaint, standing alone, does not commence an action for statute-of-limitations purposes."). "For statute-of-limitations purposes, the complaint must be filed and there must also exist 'a bona fide intent to have it immediately served.' " *Precise v. Edwards*, 60 So.3d 228, 230–31 (Ala. 2010) (citation omitted). If the plaintiff "does not perform all the tasks required to effectuate service and delays a part of the process, a lack of the required bona fide intent to serve the defendant is evidenced." *Id*. at 233. The intent necessary to commence the action is the intent to have process "immediately served." *Ward v. Saben Appliance Co.*, 391 So.2d 1030, 1035 (Ala. 1980) (emphasis added).

*Goldthrip*, 665 F. App'x at 809–10. Because the complaint specifically stated that the plaintiffs were "withholding service of process," and because a summons was not issued until nearly two months had passed after the complaint had been filed, and only then after the district court judge instructed plaintiffs' counsel to do so, the Eleventh Circuit held that the action had not been "commenced" under Alabama law before the statute had run. *Id*. at 809.[19]

Of course, in both *Walker* and *Goldthrip,* the basis for the district court's jurisdiction was diversity under 28 U.S.C. § 1332. The Court in *Walker* conducted an

---

[19] The parties did not cite *Walker, West*, or *Goldthrip*.

extensive analysis of "the *Erie* problem"[20] before ultimately reaching a conclusion

that there was no conflict between Rule 3 of the Federal Rules of Civil Procedure and

the Oklahoma statute. *See Walker*, 446 U.S. at 744-753. *Goldthrip* merely cites

*Walker* for the proposition that "in an action based on diversity jurisdiction, state law

determines when the action commenced for statute of limitations purposes."

*Goldthrip*, 665 F. App'x at 809. In the instant case, the basis for this court's

jurisdiction is that the Plaintiff seeks relief pursuant to a claim "arising under the . .

.laws . . . of the United States," 28 U.S.C. § 1331, otherwise known as federal

question jurisdiction. (*See* doc. 23 at 3). Although the First Amended Complaint

states no basis for this Court's jurisdiction over the wrongful death claim, a claim

which is based purely on state law, this Court has supplemental jurisdiction over that

claim pursuant to 28 U.S.C. § 1367 (granting supplemental jurisdiction over "all other

claims that are so related to claims in the action within such original jurisdiction that

they form part of the same case or controversy under Article III of the United States

Constitution"). Neither *Walker* nor *Goldthrip* discusses whether state law tolling

principals are also applicable in this context, and, to this Court's knowledge, neither

the Supreme Court, nor the Eleventh Circuit, have answered this question.[21]

---

[20] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[21] The parties also fail to discuss this issue.

28

Fortunately, Judge Edenfield, sitting in the Southern District of Georgia, addressed this issue extensively and persuasively in *Tillman v. Georgia*, 466 F. Supp. 2d 1311 (S.D. Ga. 2006) (Edenfield, J.), a case in which claims were made pursuant to Section 1983, and jurisdiction was based on a federal question. Supplemental state law claims, grounded in Georgia law, were also brought, but service was not perfected until 110 days later, after the statute of limitations had run. As noted by Judge Edenfield, "[t]o stop the statute of limitations clock in Georgia, a plaintiff must file suit and serve the defendant (1) within five days; or (2) after five days, so long as the plaintiff is diligent in perfecting service." *Tillman*, 466 F. Supp. 2d at 1314–15 *(citing Childs v. Catlin*, 134 Ga.App. 778, 781, 216 S.E.2d 360 (1975), and *Williams v. Bragg*, 260 Ga.App. 377, 378, 579 S.E.2d 800 (2003)). Because jurisdiction over the state law claims was based on supplemental jurisdiction, as opposed to diversity jurisdiction, the plaintiff argued that the Georgia rule did not apply. Judge Edenfield disagreed, writing:

> *Erie*'s foundation is the Rules of Decision Act, 28 U.S.C. § 1652, which requires that "[t]he laws of the several states ... shall be regarded as rules of decision in civil actions in the courts of the United States, *in cases where they apply*." *Id*. (emphasis added). The "cases where [state laws] apply" include state claims brought under supplemental jurisdiction as well as claims grounded in diversity jurisdiction. The Eleventh Circuit endorsed that view without analysis in *Jackson v. BellSouth Telecommunications*. See 372 F.3d 1250, 1274–75 (11th Cir.2004) ("we are Erie-bound to apply Florida law in evaluating plaintiffs'

29

> supplemental state-law claims"). Thus, . . . Georgia's service
> requirement applies to Tillman's state-law claims. Tillman therefore
> needed to file those claims and serve Kight in order to stop the statute
> of limitations clock.

*Id.* at 1317. This approach is followed in the Seventh and Tenth Circuits. *See*, *Sentry Corp. v. Harris*, 802 F.2d 229, 246 (7th Cir. 1986)*; U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1224–25 (10th Cir. 2008). Several other district courts have also followed this approach. *See, Sonyika v. Emory Crawford Long Hosp.*, No. 1:09-CV-1823-CAP-WEJ, 2009 WL 10669411, at *4, n. 10 (N.D. Ga. Oct. 30, 2009) (Johnson, M.J.) ("Although defendants removed this case based on federal question jurisdiction, state law governs the applicable statute of limitations for state law claims over which this Court exercises supplemental jurisdiction.") (citing *inter alia Tillman*, 466 F. Supp. 2d at 1314), *report and recommendation adopted*, No. 1:09-CV-1823-CAP-WEJ, 2009 WL 10669741 (N.D. Ga. Nov. 19, 2009); *Knight v. Aiken*, No. 1:04-CV-1909-JEC, 2006 WL 539007, at *3 (N.D. Ga. Mar. 3, 2006) (Carnes, J.) (Georgia rules regarding service in order to meet the statute of limitations state law claims brought pursuant to supplemental jurisdiction); *French v. Daviess Cty., Ken.*, No. CIV. A. 4:07CV-105-M, 2009 WL 1766928, at *5 (W.D. Ky. June 23, 2009) (McKinley, J.) ("Regardless of the basis of the Court's jurisdiction over a party's state law claims, the limitation of such claims is controlled by state

law.") (citing, *inter alia*, *Tillman*, 466 F. Supp. 2d at 1317); *Pollock v. City of Astoria*,

No. CV06–845–AS, 2007 WL 54804, at *2 (D.Or. Jan.4, 2007) (Ashmanskas, M.J.)

(finding that a § 1983 claim was timely, but that a supplemental state law claim was

untimely pursuant to the same limitations statute). Having considered these cases, and

having neither found nor been cited to any authority to the contrary, the Court is

persuaded that this approach is correct, and will apply the Alabama rule to the

wrongful death claim in Count Five.

That having been said, the Eleventh Circuit has stated that

> a Rule 12(b)(6) dismissal "on statute of limitations grounds is
> appropriate only if it is ' "apparent from the face of the complaint" ' that
> the claim is time-barred." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d
> 1275, 1288 (11th Cir.2005) (citations omitted).

*Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment CSX Transp.*

*N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008). Although the

Court agrees with the Defendants that it can take judicial notice of the docket sheet,

to decide this issue at this stage would foreclose the possibility that the Plaintiff may

be able to provide other evidence which demonstrates due diligence. *See, Carter v.*

*Walgreens Specialty Pharmacy LLC*, No. 2:17-CV-3-RDP, 2017 WL 2001706, at *2

(N.D. Ala. May 12, 2017) (Proctor, J.) (discussing "the benefit of assessing a

plaintiff's intent to serve the complaint on a motion for summary judgment, rather

than a motion to dismiss."). Accordingly, this issue is better resolved in the context of a Motion for Summary Judgment.[22] The Motion To Dismiss Count Five will be denied.

## V.     CONCLUSION

Based on the foregoing, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1.     The City of Jacksonville's Motion To Dismiss is:

      a.     **GRANTED** to the extent that Count Five is asserted against it. Count Five is hereby **DISMISSED with prejudice** to the extent that it is asserted against the City of Jacksonville;

      b.     **GRANTED** to the extent that Count Three asserts any state law claims against it. Any state law claims asserted against the City of Jacksonville in Count Three are **DISMISSED with prejudice**; and

      c.     **GRANTED** as to Counts One and Two. Counts One and Two are

---

[22] The Court recognizes that Officer Edwards's motion is entitled "Motion To Dismiss First Amended Complaint, or in the Alternative, Motion for Summary Judgment." (Doc. 30 at 1). However, the only standard set out is the standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure for deciding a motion to dismiss. (Doc. 30 at 6). Furthermore, the motion is argued as a motion to dismiss. *See* doc. 31 at 3 (arguing that the statute of limitations issue is properly considered on a motion to dismiss). The parties' briefs generally treat the motion as a motion to dismiss. Accordingly, and especially considering the early stage of this litigation, the Court also treats the motion as a motion to dismiss only. To the extent that a motion for summary is deemed to be a part of Officer Edwards's motion, it is **DENIED without prejudice**.

hereby **DISMISSED with prejudice**.

2.      In all other respects, the City's Motion To Dismiss is **DENIED**.

3.      The Motion to Dismiss of Defendant Officer Edwards is **DENIED**.

      **DONE** and **ORDERED** this 12th day of July, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge