FILED

2019 Feb-11  AM 10:37
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA, EASTERN DIVISION

**SHIRLEY McBRAYER FLOOD, as**    )
**PERSONAL REPRESENTATIVE of**   )
**THE ESTATE OF DAVID DANIEL**    )
**McBRAYER, deceased**    )
    )
    Plaintiff    )
    ) Case No. **1:16-cv-1832-ACA**
    )
**CITY OF JACKSONVILLE,**    ) Hon. Annemarie C. Axon presiding
**ALABAMA,**    )
    )
    Defendant    )

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Comes now the Defendant, City of Jacksonville ("Jacksonville"), which offers this reply to Plaintiff's response in opposition (Doc. 81) to its motion for summary judgment (Doc. 76).

## **Table of Contents**

Response to Plaintiffs' Narrative Summary of Alleged Undisputed Facts…..…..…1

Response to Plaintiffs' Narrative Summary of Alleged Disputed Facts…….…..…12

Response to Plaintiff's Legal Argument…………..……………………….…...17

      I.      No constitutional violation in Edwards' reasonable use of force, so no liability for Jacksonville…………………………………………..19

      II.     No genuine issue of material fact as to Edwards' knowledge of McBrayer's alleged mental illness…………………………….…..22

     III.    No genuine issue of material fact as to how Jacksonville officers are trained in the use of force…………………………………………23

     IV.   No genuine issue of material fact as to whether Jacksonville's training on the use of force constitutes "deliberate indifference"……..………24

Certificate of Filing and Service………………………………………………27

## Response to Plaintiff's Narrative Summary of Alleged Undisputed Facts

1.      Defendant does not dispute the facts set forth in Paragraph 1, but does respectfully state that these alleged facts are irrelevant and should be disregarded by the Court because these facts are not material to the determination of Plaintiff's sole remaining claim under 42 U.S.C. § 1983 of "failure to train." To prevail on this claim, Plaintiff would have to show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the constitutional violation."[1] Despite being undisputed, because these alleged facts do not tend to establish any of these elements, they do not create any genuine issue of material fact that defeats summary judgment.[2] Moreover, because Plaintiff ultimately lacks the required substantial evidence to establish the essential elements of her claim, all other facts are necessarily rendered immaterial in any event.[3]

2.      Defendant adopts its response in Paragraph 1 to this Paragraph 2.

3.      Defendant adopts its response in Paragraph 2 to this Paragraph 3.

---

[1] McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004); City of Canton v. Harris, 489 U.S. 378, 388 (1989).

[2] See McCollough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009) (to overcome summary judgment, "facts in dispute must raise a genuine issue of fact material to the determination of the underlying issue").

[3] "Facts in dispute cease to be 'material' facts when the plaintiff fails to establish a prima facie case. 'In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Bennett v. Parker, 898 F.2d 1530, 1532 (11th Cir. 1990) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). See also Craig v. Floyd Cty., 643 F.3d 1306, 1309 (11th Cir. 2011).

4.    Disputed as to the reference to what "officers" allegedly "thought" and as to the reference to "JPD" in the collective. Any such statements in the affidavit signed by McBrayer's father and submitted with Plaintiff's evidentiary submission are either speculation or inadmissible hearsay. The November 8, 2014 arrest report indicates only that JPD officers Gilbar and Lyons (who are not and never have been named parties to this case) could smell the odor of an alcoholic beverage on McBrayer. (Doc. 76-3/PX09.) The actual deposition testimony was also that a single (unnamed) jailor began to suspect that McBrayer might have a mental health problem within the first six hours after the November 8 arrest. (Id./pp.41-42, 57.) These facts are also immaterial because this case does not involve any claim relating to McBrayer's confinement in the jail and Plaintiff has purportedly conceded that this case does not present a claim for any alleged failure to accommodate McBrayer's alleged mental illness. (See Doc. 81/p.27.)

5.    Disputed as to the reference to "JPD" in the collective and as to the characterization that "JPD was concerned about releasing [McBrayer] on his own." Defendant adopts its response in Paragraph 4 to this Paragraph 5.

6.    Defendant does not dispute the facts set forth in Paragraph 6, but does respectfully state that these alleged facts are irrelevant and should be disregarded by the Court because, for the reasons set forth in response to Paragraph 1, these facts

are not material to the determination of this case and do not create any genuine issue of material fact that defeats summary judgment.

7.  Defendant adopts its response in Paragraph 6 to this Paragraph 7. Moreover, to the extent that Plaintiff will later attempt to rely on this alleged fact to argue or have this Court infer that Edwards knew McBrayer was mentally ill before the fatal encounter, Defendant objects to any such usage of this alleged fact because Plaintiff's sought-after inference is based on speculation and conjecture and is not reasonable, nor is it supported by any affirmative evidence.[4]

8.  Defendant adopts its response in Paragraph 7 to this Paragraph 8.

9.  Defendant adopts its response in Paragraph 7 to this Paragraph 9.

10. Defendant adopts its response in Paragraph 7 to this Paragraph 10.

11. Defendant does not dispute the facts set forth in Paragraph 11, but does respectfully state that these alleged facts are irrelevant and should be disregarded by the Court because, for the reasons set forth in response to Paragraph 1, these facts are not material to the determination of this case and do not create any genuine issue of material fact that defeats summary judgment. Again, these facts are also

---

[4] Ave. CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013) (although all reasonable inferences are to be drawn in favor of the nonmoving party, "an inference based on speculation and conjecture is not reasonable"). "Though factual inferences are made in [Plaintiff's] favor, this rule applies only 'to the extent supportable by the record.'" Hammett v. Paulding Cty., Ga., 875 F.3d 1036, 1050 (11th Cir. 2017) (quoting Penley v. Eslinger, 605 F.3d 843, 853 (11th Cir. 2010) (quoting in turn Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)). "The mere fact that the record, when viewed in the light most favorable to Plaintiff, is theoretically not inconsistent with his narrative, is not enough to survive summary judgment." Id.

immaterial because this case does not involve any claim relating to McBrayer's confinement in the jail and Plaintiff has purportedly conceded that this case does not present a claim for any alleged failure to accommodate McBrayer's alleged mental illness. (See Doc. 81/p.27.) Moreover, any alleged statements by some unnamed "JPD officer" are inadmissible hearsay that cannot be reduced to admissible form at trial, and which therefore cannot be considered on a motion for summary judgment.[5]

12.     Defendant adopts its response in Paragraph 11 to this Paragraph 12.

13.     Defendant adopts its response in Paragraph 11 to this Paragraph 13.

14.     Defendant adopts its response in Paragraph 11 to this Paragraph 14. McBrayer's alleged statements to his father are also inadmissible hearsay that cannot be considered on a motion for summary judgment.[6]

15.     Defendant does not dispute the facts set forth in Paragraph 15, but does respectfully state that these alleged facts are irrelevant and should be disregarded by the Court because, for the reasons set forth in response to Paragraph 1, these facts are not material to the determination of this case and do not create any genuine issue of material fact that defeats summary judgment.

16.     Defendant adopts its response in Paragraph 15 to this Paragraph 16.

17.     Defendant adopts its response in Paragraph 15 to this Paragraph 17.

---

[5] Jones v. UPS Ground Freight, 683 F.3d 1283, 1293 (11th Cir. 2012) (citing Macuba v. DeBoer, 193 F.3d 1316, 1322 (11th Cir. 1999)).
[6] Id.

18.     Defendant adopts its response in Paragraph 15 to this Paragraph 18. Also, this case does not involve any claim related to these alleged facts, and McBrayer's father does not allege that he ever subsequently attempted to call for police assistance in obtaining treatment for McBrayer.

19.     Defendant adopts its response in Paragraph 15 to this Paragraph 19.

20.     Defendant adopts its response in Paragraph 15 to this Paragraph 20.

21.     Disputed as to the contention that Edwards and Tomlinson "advised [an apartment resident] that [McBrayer] was 'mentally unstable.'" As an initial matter, the evidentiary support for this contention is <u>triple</u> hearsay in that it is a summary by an Alabama Bureau of Investigation Special Agent about what a witness told him that unnamed JPD officers allegedly told her. (<u>See</u> Doc.80/p.7.) It is inadmissible in considering the motion for summary judgment.[7] Even if Plaintiff could somehow overcome this objection, Defendant further objects to this alleged fact because (1) Edwards and Tomlinson are never identified as the declarants of this alleged statement; (2) Edwards has testified that he was not aware McBrayer had a mental

---

[7] Where there are multiple layers of hearsay, each layer must be excepted from the hearsay rule for the statement to be admissible. <u>See</u> Fed. R. Evid. 805 (providing that "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule"); <u>see also United States v. Pendas—Martinez</u>, 845 F.2d 938, 942-43 (11th Cir. 1988) ("[E]ven if one level of double-hearsay statement was not hearsay under Rule 801(d)(1)(B), second level of hearsay was not excepted from rule and document was inadmissible" (citing <u>S. Stone Co. v. Singer</u>, 665 F.2d 698, 703 (5th Cir. Unit B Jan.1982)). Here, Plaintiff has eliminated, at best, only <u>one</u> level of hearsay (the first) by citing to Fed. R. Evid. 803(8), which covers "public records," but this does not make the underlying hearsay statements any less hearsay and any less inadmissible.

health condition before the fatal encounter;[8] and (3) Plaintiff does not have affirmative evidence that Edwards was involved in McBrayer's prior arrest, nor does Plaintiff have any evidence that Edwards knew McBrayer was suffering from mental illness.[9]

22.     Defendant does not dispute that Edwards and Tomlinson were at the Coliseum Apartments investigating a call about "a person shooting a BB gun or gun like that" at cars in the parking lot of the Coliseum Apartments. (See Doc.76-2/pp.23, 27-28, 43; Doc.76-3/p.66.) Defendant does object to the use of the so-called "Scott Statement" for any purpose in considering this summary judgment motion, for the reasons detailed in Paragraph 21.

23.     Defendant adopts its response to Paragraph 22 to this Paragraph 23.

24.     Disputed as to the characterization that Edwards "ignored" his superior officer's directions on the scene. Edwards testified that the situation changed when McBrayer came outside. (Doc. 76-2/pp.52-53.)

25.     Defendant does not dispute that the referenced written statement is correctly quoted, but objects to the inference that Plaintiff attempts to draw from it that Edwards knew McBrayer was mentally ill. During his deposition, Edwards

---

[8] See Doc.76-2/pp.19, 22-23.
[9] See Doc. 76-4/p.33; Doc.76-5/¶81.

clarified that it was his supervisor, Bishop, who actually knew McBrayer from the prior arrest. (Doc.76-2/p.44.)

26.    Defendant does not dispute the facts set forth in Paragraph 26, but does respectfully state that these alleged facts are irrelevant and should be disregarded by the Court because, for the reasons set forth in response to Paragraph 1, these facts are not material to the determination of this case and do not create any genuine issue of material fact that defeats summary judgment.

27.    Disputed as to the characterization of where McBrayer intended to walk after leaving the trunk of his car, as this is speculation. Defendant also respectfully states that, for the reasons set forth in response to Paragraph 1, these alleged facts do not create any genuine issue of material fact that defeats summary judgment.

28.    Defendant does not dispute the facts set forth in Paragraph 28, but does respectfully state that these alleged facts are irrelevant and should be disregarded by the Court because, for the reasons set forth in response to Paragraph 1, these facts are not material to the determination of this case and do not create any genuine issue of material fact that defeats summary judgment.

29.    Defendant adopts its response in Paragraph 28 to this Paragraph 29.

30.    Disputed as to the characterization that Edwards and Tomlinson "independently decided to pursue McBrayer." Edwards testified that the situation changed when McBrayer came outside. (Doc. 76-2/pp.52-53.) Moreover, to the

extent that Plaintiff may attempt to rely on this alleged fact to argue or have this Court infer that Edwards' use of force was unreasonable, Defendant objects to any such usage of this alleged fact because any such inference would be contrary to the guiding legal principles on the use of force when an armed suspect poses a threat to the officers or others. As to any alleged assertions based on the video recordings in this case, Defendant respectfully asks this Court to disregard any non-factual or advocatory gloss of the pertinent events and to "view the facts in the light depicted by the videotape."[10]

31.    As to any alleged assertions based on the video recordings in this case, Defendant respectfully asks this Court to disregard any non-factual or advocatory gloss of the pertinent events and to "view the facts in the light depicted by the videotape."[11]

32.    Defendant adopts its response to Paragraph 31 to this Paragraph 32.

33.    Defendant adopts its response to Paragraph 31 to this Paragraph 33.

34.    Defendant adopts its response to Paragraph 31 to this Paragraph 34.

35.    Defendant adopts its response to Paragraph 31 to this Paragraph 35.

36.    Defendant adopts its response to Paragraph 31 to this Paragraph 36.

37.    Defendant adopts its response to Paragraph 31 to this Paragraph 37.

---

[10] Scott, 550 U.S. at 380-81.
[11] Id.

38.     Defendant adopts its response to Paragraph 31 to this Paragraph 38.

39.     Defendant adopts its response to Paragraph 31 to this Paragraph 39.

40.     Defendant adopts its response to Paragraph 31 to this Paragraph 40.

41.     Disputed as to the characterization that the alleged crime was not "serious" because this characterization is not supported by Plaintiff's cited evidentiary material. Moreover, even if the initial crime being investigated was a property crime, at the time of the shooting, McBrayer's conduct had escalated into threating police officers with an edged weapon. (See Doc. 76-2/pp.33-34.)

42.     Disputed. Edwards testified that the reasons McBrayer was not free to return to his apartment was that he was "threatening two officers with a knife." (Doc. 76-2/p.34.) Edwards also testified McBrayer was resisting arrest because he was being detained for an investigation and he refused. (Id.)

43.     Defendant respectfully asks this Court to disregard any non-factual or advocatory gloss of the pertinent events and to "view the facts in the light depicted by the videotape."[12]

44.     Defendant does not dispute the facts set forth in Paragraph 44, but does respectfully state that, for the reasons set forth in response to Paragraph 1, they do not create any genuine issue of material fact that defeats summary judgment.

---

[12] Scott, 550 U.S. at 380-81.

45.     Disputed to the extent that this statement attempts to imply or have this Court infer that police officers cannot use reasonable force to respond to a threat to their health or safety, regardless of whether the individual is suffering from a mental health crisis, as any such assertion is rebutted by Plaintiff's own expert, who confirmed that an individual suffering from a mental health crisis could react violently or erratically, just as an individual would who was under the influence of drugs, and that this "sometimes appear[ed] to be the same" to an average officer, (Doc. 76-4/pp.30-31), that an individual with an edged weapon walking toward an officer is "still a threat" regardless of whether the individual is mentally sound or unsound (id./pp.99, 137), and that an individual like McBrayer posed a threat under the circumstances facing the Jacksonville officers at the time of the shooting, (id./pp.84, 93, 99, 137).

46.     Defendant does not dispute the facts set forth in Paragraph 46, but does respectfully state that, for the reasons set forth in response to Paragraph 1, they do not create any genuine issue of material fact that defeats summary judgment.

47.     Defendant adopts its response to Paragraph 46 to this Paragraph 47.

48.     Defendant adopts its response in Paragraph 46 to this Paragraph 48. Moreover, to the extent that Plaintiff will later attempt to rely on this alleged fact to argue or have this Court infer that Jacksonville does not conduct de-escalation training, Defendant objects to any such usage of this alleged fact because Plaintiff's

sought-after inference is based on speculation and conjecture and is not reasonable, nor is it supported by any affirmative evidence.[13]

49.     Defendant adopts its response to Paragraph 48 to this Paragraph 49.

50.     Defendant does not dispute the facts set forth in Paragraph 50, but does respectfully state that, for the reasons set forth in response to Paragraph 1, they do not create any genuine issue of material fact that defeats summary judgment.

51.     Disputed, as Jacksonville provides training to its officers on de-escalation techniques and the constitutional use of force and this is the correct legal standard by which the adequacy of training is to be measured. (See Doc. 76-3/pp.44, 48-49, 70-72). Defendant also does respectfully state that, for the reasons set forth in response to Paragraph 1, these alleged facts do not create any genuine issue of material fact that defeats summary judgment.

52.     Defendant does not dispute the facts set forth in Paragraph 52, but does respectfully state that, for the reasons set forth in response to Paragraph 1, they do not create any genuine issue of material fact that defeats summary judgment.

53.     Defendant adopts its response to Paragraph 52 to this Paragraph 53.

54.     Defendant adopts its response to Paragraph 52 to this Paragraph 54.

55.     Defendant adopts its response to Paragraph 52 to this Paragraph 55.

---

[13] Ave. CLO Fund, Ltd., 723 F.3d at 1294 (speculative factual inferences are not reasonable for summary judgment purposes); Hammett, 875 F.3d at 1050 (rule that factual inferences are made in a plaintiff's favor applies only to the extent supported by the record).

56.     Defendant adopts its response to Paragraph 52 to this Paragraph 56.

57.     Defendant adopts its response to Paragraph 52 to this Paragraph 57.

58.     Defendant adopts its response to Paragraph 52 to this Paragraph 58.

59.     Defendant does not dispute that this is an accurate quotation from the deposition of Plaintiff's expert witness, but does dispute that this is proper expert opinion. An expert witness's opinion that is conclusory, speculative, and without a proper evidentiary foundation (as is this statement) cannot create a genuine issue of material fact.[14] Moreover, the issues in this case (whether McBrayer's constitutional rights were violated, whether Jacksonville had a custom or policy that constituted deliberate indifference to that constitutional right, and whether any such policy or custom caused any constitutional violation) are all pure questions of law and are not matters subject to expert testimony in any event.[15] Therefore, this Court should disregard this alleged fact for summary judgment purposes.

60.     Defendant adopts its response to Paragraph 59 to this Paragraph 60. Moreover, these facts are also immaterial because this case does not involve any claim relating to McBrayer's confinement in the jail and Plaintiff has purportedly

---

[14] Cf. generally Cook v. Sheriff of Monroe Cty., 402 F.3d 1092, 1106 (11th Cir. 2005) (concluding district court did not abuse its discretion in excluding expert testimony in its entirety at trial for multiple reasons, including, but not limited to, relevance, unhelpfulness, lack of sufficient factual foundation, and ipse dixit).

[15] Myers, 713 F.3d at 1328 (expert testimony that police officer's use of force was excessive did not create a disputed issue of material fact); Clemons v. Knight, 662 F. App'x 725, 729 (11th Cir. 2016) (experts' opinions did not create genuine issue of material fact regarding whether reasonable officer could have perceived vehicle posed a danger).

conceded that this case does not present a claim for any alleged failure to accommodate McBrayer's alleged mental illness. (See Doc. 81/p.27.)

61.    Defendant does not dispute that its expert, Jack Ryan has written material on the subject of mental illness, but does respectfully state that, for the reasons set forth in response to Paragraph 1, this fact does not create any genuine issue of material fact that defeats summary judgment.

62.    Defendant does not dispute that this is an accurate quotation from Plaintiff's expert witness, but does dispute that this is proper expert opinion. An expert witness's opinion that is conclusory, speculative, and without a proper evidentiary foundation (as is this statement) cannot create a genuine issue of material fact. This alleged fact is also disputed as to the characterization that Defendant made a "deliberate choice not to have a policy on responding to persons affected by mental illness" because this assertion is not supported by the record.

63.    Defendant does not dispute that its expert, Jack Ryan, wrote the quoted material, but does respectfully state that, for the reasons set forth in response to Paragraph 1, this fact does not create any genuine issue of material fact that defeats summary judgment.

64.    Disputed, as Jacksonville's overall use of force policy makes clear that an officer's use of force must be reasonable and necessary, two standards that are not only used in law enforcement policy and training, but also used in the legal

standards governing use of force, and Edwards' use of force against McBrayer was consistent with generally accepted policies, practices, training, and legal mandates applicable to police officers in field operations. (Doc. 76-5/¶¶63, 77, 79.) Defendant also objects to this alleged fact as immaterial for the reasons set forth in response to Paragraph 1, and more particularly because Plaintiff lacks any evidence, much less substantial evidence, to establish that this alleged deficiency caused any alleged violation of McBrayer's constitutional rights, given that Plaintiff's own expert confirmed repeatedly that an individual like McBrayer posed a threat under the circumstances facing the Jacksonville officers at the time of the shooting. (Doc. 76-4/pp. 84, 93, 99, 137.) Defendant also adopts its response from Paragraph 59 that this statement in Paragraph 64 is not proper expert opinion, should be disregarded, and does not create a genuine issue of material fact.

65.    Defendant does not dispute that this is an accurate quotation from Plaintiff's expert witness, but does object to this alleged fact as immaterial for the reasons set forth in response to Paragraph 1, and more particularly because Plaintiff lacks any evidence, much less substantial evidence, to establish that this alleged deficiency caused any alleged violation of McBrayer's constitutional rights, given that Plaintiff's own expert confirmed repeatedly that an individual like McBrayer posed a threat under the circumstances facing the Jacksonville officers at the time of the shooting. (Doc. 76-4/pp. 84, 93, 99, 137.) Defendant also adopts its response

from Paragraph 59 that this statement in Paragraph 65 is not proper expert opinion, should be disregarded, and does not create a genuine issue of material fact.

66.    Defendant adopts its response to Paragraph 65 to this Paragraph 66.

67.    Defendant adopts its response to Paragraph 65 to this Paragraph 67.

68.    Defendant adopts its response to Paragraph 65 to this Paragraph 68.

69.    Defendant adopts its response to Paragraph 65 to this Paragraph 69.

70.    Defendant adopts its response to Paragraph 65 to this Paragraph 70. Defendant also reavers that what a reasonable police officer would have done is a pure question of law, not subject to expert testimony in any event.

71.    Defendant adopts its response to Paragraph 70 to this Paragraph 71.

72.    Defendant does not dispute that this is an accurate quotation from Plaintiff's expert witness, but does dispute that this is proper expert opinion. An expert witness's opinion that is conclusory, speculative, and without a proper evidentiary foundation (as is this statement) cannot create a genuine issue of material fact. Moreover, the issues in this case (whether McBrayer's constitutional rights were violated, whether Jacksonville had a custom or policy that constituted deliberate indifference to that constitutional right, and whether any such policy or custom caused any constitutional violation) are all pure questions of law and are not

matters subject to expert testimony in any event.[16] Therefore, this Court should disregard this alleged fact for summary judgment purposes.

73.     Defendant adopts its response to Paragraph 72 to this Paragraph 73.

---

[16] <u>Myers</u>, 713 F.3d at 1328; <u>Clemons</u>, 662 F. App'x at 729.

## Response to Plaintiff's Legal Argument

This case arises from Jacksonville Police Officer Edwards' shooting of McBrayer, who was armed with a knife and was in close proximity to and was approaching Edwards and a fellow officer. Plaintiff has attempted to achieve maximum sympathetic effect by depicting McBrayer as suffering from a mental health crisis. However, the reality remains that McBrayer posed a serious threat at the time of the shooting. To hold Jacksonville liable for McBrayer's death, Plaintiff would have to show: (1) that his constitutional rights were violated; (2) that the city had a custom or policy that constituted deliberate indifference to that right; and (3) that the policy or custom caused the constitutional violation."[17] Plaintiff lacks substantial evidence of <u>any</u> of these requirements to establish her "failure to train claim," and her legal argument offers nothing new to overcome summary judgment.

The four reasons Plaintiff contends warrant the denial of summary judgment[18] are unavailing. <u>First</u>, Plaintiff is incorrect that there are material facts in dispute. Whether force is excessive under a given set of facts is a pure question of law[19] and here, not only is there undisputed video, but Plaintiff's own expert confirmed repeatedly that McBrayer posed a threat when he was shot.[20] <u>Second</u>, there is no genuine dispute as to whether Edwards knew McBrayer was mentally ill. For factual

---

[17] <u>McDowell</u>, 392 F.3d at 1289; <u>City of Canton</u>, 489 U.S. at 388.
[18] <u>See</u> Doc. 81/p.18.
[19] <u>Myers v. Bowman</u>, 713 F.3d 1319, 1328 (11th Cir. 2013).
[20] <u>See</u> Doc.76-4/pp.84, 93, 99, 137.

-17-

issues to be genuine, they "must have a real basis in the record,"[21] and the inference Plaintiff attempts to draw is not a <u>reasonable</u> one.[22] <u>Third,</u> the same is true of any attempted assertion that Jacksonville does not train in de-escalation techniques.

<u>Fourth</u>, respectfully, the argument that Jacksonville has a "complete lack of training" on the use of force on the mentally ill is an unavailing attempt by Plaintiff to conflate the correct legal standards and revive the already-dismissed ADA/RA claims. The reasonableness of a use of force simply does not rise or fall on alleged mental illness issues in isolation, but on the totality of the circumstances.[23] In turn, the adequacy of a city's training in use of force is properly evaluated as a whole and not by isolating alleged deficiencies on dealing with the mentally ill, and Plaintiff's argument otherwise should be rejected.[24]

Stripped of its emotion and attempted innuendo, in this case, there was no underlying constitutional violation by Officer Edwards; there had not been an incident of Jacksonville police using lethal force for at least 35 years; and there was no knowledge by the city of a need for additional training, nor a causal link between McBrayer's death and any city "policy or custom." This Court should grant summary judgment in Jacksonville's favor.

---

[21] <u>Evans v. Books-A-Million</u>, 762 F.3d 1288, 1294 (11th Cir. 2014) (internal citation omitted).
[22] <u>See Ave. CLO Fund, Ltd.</u>, 723 F.3d at 1294; <u>Hammett</u>, 875 F.3d at 1050.
[23] <u>Smith v. LePage</u>, 834 F.3d 1285, 1294 (11th Cir. 2016) (quotation marks omitted).
[24] <u>Shaw v. City of Selma</u>, 241 F. Supp. 3d 1253, 1279-80 (S.D. Ala. 2017) (claim of "lack of 'training on dealing with the mentally ill'" involving suspect armed with axe failed because plaintiff did not demonstrate training deficiencies).

## I.   No constitutional violation in Edwards' reasonable use of force, so no liability for Jacksonville.

Plaintiff first attempts to create a genuine issue of material fact by arguing Edwards' use of force against McBrayer was unreasonable because of McBrayer's alleged mental health status.[25] But, this is misguided under the well-recognized principle that deadly force is "reasonable, and therefore constitutionally permissible," when an officer has "probable cause to believe his own life is in peril,"[26] or when a suspect, mentally ill or not, is reasonably believed to pose a grave danger or threat of imminent harm to the officer or others.[27] Plaintiff only points to readily distinguishable cases to argue the contrary. Begin v. Drouin only generally confirms that, "depending on the circumstances," a court "could" regard mental illness as "a" factor in applying force, and is factually inapposite because there, the decedent was not moving toward the officer or any other person and was shot without being given a warning or instruction to drop the knife.[28]

Equally unavailing and distinguishable is Herrera v. Las Vegas Metro. Police Dept.[29] In Herrera, police entered the decedent's home knowing he was alone and mentally disturbed. Although armed with a small knife, he was not moving toward

---

[25] See Doc. 81/pp.19-21, 28-30.

[26] Singletary v. Vargas, 804 F.3d 1174, 1181 (11th Cir. 2015) (internal quotation omitted).

[27] E.g., Shaw, 241 F. Supp. 3d at 1273-74; Collar v. Austin, 2015 U.S. Dist. LEXIS 122609, at *36 (S.D. Ala. Sep. 15, 2015).

[28] 2017 U.S. Dist. LEXIS 60160, at *21 n.13 & 22-23 (D. Me. Apr. 20, 2017).

[29] 298 F. Supp. 2d 1043 (D. Nev. 2004).

them when they used non-lethal force, and when they escalated to lethal force, he was "merely standing with the knife pointed skyward, stunned, for nearly a full minute."[30] In the some fifteen years since it was decided, <u>Herrera</u> has been distinguished three times due to factual differences that mirror those faced by Edwards when encountering McBrayer.[31]

Here, like the cases that distinguish <u>Herrera</u>, the undisputed facts show that McBrayer, an armed and noncompliant suspect, posed a clear danger as he ignored repeated commands to drop the knife and continued to advance toward Edwards. When he made the decision to shoot, Edwards felt McBrayer threatened his and Tomlinson's safety.[32] This is exactly the type of "tense, uncertain and rapidly evolving" crisis envisioned by the Supreme Court,[33] where inaction could have been fatal to Edwards or his fellow officer, that forecloses any liability on his part.

<u>Shaw v. City of Selma</u> also notably forecloses Plaintiff's apparent argument that there was a constitutional violation because the officers were somehow "aggressors" who "provoked" a confrontation with McBrayer.[34] As in <u>Shaw</u>, the

---

[30] <u>Barber v. Santa Rosa</u>, 2010 U.S. Dist. LEXIS 129093, at *17-18 (N.D. Cal. Dec. 7, 2010).

[31] <u>Soto v. City of N.Y.</u>, 283 F. Supp. 3d 135 (S.D.N.Y. 2017) (decent was armed, pointed knife at officers, and was charging towards them and a third party); <u>Prostrollo v. City of Scottsdale</u>, 2014 U.S. Dist. LEXIS 139612 (D. Ariz. Sep. 30, 2014) (plaintiff was advancing on officers with deadly weapon and refused to stop, posing "significant threat" of death or serious injury); <u>Barber</u>, 2010 U.S. Dist. LEXIS 129093, at *17 (plaintiff armed with knife was agitated, failed to respond to police commands, was a short distance from and advancing on officers).

[32] <u>See</u> Doc. 75; Doc.76-2/pp.27, 30, 34, 45-47, 49-50, & PX01.

[33] <u>Graham v. Connor</u>, 490 U.S. 386 (1989).

[34] <u>See</u> 241 F. Supp. 3d at 1273-74 (concluding "no reasonable observer" could conclude officer provoked the suspect but was trying to defuse a dangerous situation with an erratic, hostile, armed

fundamental problem with Plaintiff's "provocation" argument and lengthy recitation of her perception of the <u>Graham</u> factors[35] is that it contradicts the evidence as shown in the light depicted by the videotape[36] and ignores the Supreme Court's admonition that "officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."[37] However true it may be, as a general abstract proposition, that there is a "commonsense" need to mitigate force when apprehending a <u>non-resistant</u> suspect who was <u>known</u> to have diminished capacity,[38] McBrayer was neither "non-resisting" nor known by Edwards to have diminished capacity, and non-compliance by a suspect with police commands, particularly by an armed suspect, supports the conclusion that use of deadly force was reasonable.[39]

Even Plaintiff's own expert repeatedly conceded that an individual with a mental health crisis could react violently or erratically in a way that created a threat to police officers and that an individual with an edged weapon walking toward an officer, like McBrayer, is "still a threat" regardless of mental soundness.[40] Despite

---

suspect, and even if plaintiff showed "provocation," there was no clearly established law declaring it unconstitutional for a police officer to approach a suspect or "provoke" a confrontation).

[35] <u>See</u> Doc. 81/pp.28-31.

[36] <u>Scott</u>, 550 U.S. at 380-81.

[37] <u>Graham</u>, 490 U.S. at 396-97.

[38] <u>See</u> Doc. 81/pp.20-21 (citing <u>Phillips v. Cmty. Ins. Corp.</u>, 678 F.3d 513 (7th Cir. 2012).

[39] <u>Hammett</u>, 875 F.3d at 1051; <u>Penley</u>, 605 F.3d at 851.

[40] Doc. 76-4/pp.30-31, 99, 137.

Plaintiff's attempt to create a factual issue, Edwards' use of force is a pure question of law that must be resolved in his favor, foreclosing in turn Jacksonville's liability.[41]

## II.   No genuine issue of material fact as to Edwards' knowledge of McBrayer's alleged mental illness.

This Court should reject Plaintiff's argument that "the City" was aware McBrayer had a "serious, untreated mental problem" and that Edwards specifically knew that McBrayer was "suffering from a mental illness" prior to the fatal encounter.[42] The "City's" alleged knowledge, based on McBrayer's previous incarceration and his father's interactions with the JPD, is a red herring. The only claim here relates to the shooting, and any generalized knowledge about McBrayer's mental status at prior times is not material to what Edwards was facing at that time.

Plaintiff's attempt to create an issue of fact that <u>Edwards</u> knew McBrayer was mentally ill is pure speculation that does not defeat summary judgment. It appears to be based on nothing more than the otherwise-irrelevant alleged fact that Edwards was on duty at various times during McBrayer's previous incarceration, and an assertion that Edwards "wrote that he knew [McBrayer] was suffering from mental illness" but "denie[d] such knowledge in his subsequent deposition."[43] The fact that Edwards was on duty at times during McBrayer's incarceration tells this Court

---

[41] <u>Shaw</u>, 241 F. Supp. 3d at 1279.
[42] <u>See</u> Doc. 81/p.31.
[43] <u>See</u> Doc. 81/p.6, ¶ 9 & 30, n.5.

nothing about whether Edwards encountered McBrayer in the jail (which he denies) and is insufficient to permit a <u>reasonable</u> inference for summary judgment purposes.[44] Instead, all the available admissible evidence refutes any assertion that Edwards knew McBrayer was mentally ill prior to the shooting and Plaintiff has no affirmative evidence otherwise.[45] Moreover, Plaintiff's attempt to assert that Edwards has "contradicted" himself on this point is simply not supported by a fair reading of the evidence in its proper context but is strained at best given the clarification that it was Edwards' supervisor who had prior knowledge of McBrayer.[46] Such an attempt to create a genuine issue of material fact from a single, abstract statement taken out of context must necessarily fail. Plaintiff has not pointed to any affirmative evidence that creates a genuine issue of fact that Edwards knew McBrayer was mentally ill and should have responded differently in some way.[47]

### III.   No genuine issue of material fact as to how Jacksonville officers are trained in the use of force.

Plaintiff insists that this Court "must" make an inference from the record that "there is no de-escalation training in the JPD,"[48] but this is also wrong. Pusin's assertion that this training does not actually occur because there are no lesson plans

---

[44] <u>Ave. CLO Fund, Ltd.</u>, 723 F.3d at 1294; <u>Hammett</u>, 875 F.3d at 1050.
[45] <u>See</u> Doc.76-2/pp. 19, 22-23; Doc. 76-4/p.33.
[46] <u>See</u> Doc.76-2/p.44.
[47] <u>Hammett</u>, 875 F.3d at 1050 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").
[48] <u>See</u> Doc. 81/p.32 n.7.

is unsupported nonexpert personal opinion that lacks a basis in the record and does not create a genuine factual issue.[49] This case is like <u>Mingo v. City of Mobile</u>, where the plaintiff attempted to argue the officers were not "actually trained" on four-point restraints and identifying the mentally ill, but the deputy chief testified they were. Because the <u>Mingo</u> plaintiff did not point to any evidence that conflicted with that testimony, the court ruled "we cannot find that a material issue of fact exists" on this issue.[50] Likewise, Assistant Chief Wineman's testimony demonstrates that de-escalation training and instruction on use of force occurs at Jacksonville twice a year and that Edwards actually received this training.[51] Any inference Plaintiff seeks to have this Court draw otherwise is pure speculation and is not a <u>reasonable</u> inference that defeats summary judgment.[52]

## IV. No genuine issue of material fact as to whether Jacksonville's training on the use of force constitutes "deliberate indifference."

The sole claim that <u>is</u> truly at issue here is whether Plaintiff can demonstrate that Jacksonville was "deliberately indifferent" to a need to train its officers.[53] She

---

[49] <u>Evans</u>, 762 F.3d at 1294.

[50] 592 F. App'x 793, 802 (11th Cir. 2014). In this regard, Plaintiff's attempted reliance on <u>Ostling v. City of Bainbridge Island,</u> 872 F. Supp. 2d 1117 (W.D. Wash. 2012) and <u>Russo v. Cincinnati</u>, 953 F.2d 1036 (6th Cir. 1992) is also misplaced because <u>Ostling</u> involved a situation where the record showed that fewer than all of the officers received training and <u>Russo</u> involved a situation where the "content and adequacy" of the training was in dispute. Neither is true here on this record.

[51] Doc. 76-3/pp.48-49, 70-72.

[52] <u>Ave. CLO Fund, Ltd.,</u> 723 F.3d at 1294; <u>Hammett</u>, 875 F.3d at 1050.

[53] Respectfully, this Court should disregard Plaintiff's argument that McBrayer had a constitutional right to medical care during his previous incarceration or should not have been released on his own. (<u>See</u> Doc. 81/pp.31-32.) This case does not present these claims and a plaintiff cannot recast or expand his claims when opposing summary judgment. <u>Watts v. City of Opelika</u>, 2015 U.S. Dist.

has not (and cannot). The adequacy of a city's training in the use of force is properly evaluated as a whole and not as Plaintiff has continued to attempt to do, by isolating alleged deficiencies on dealing with the mentally ill. This Court should analyze the issue as one of the reasonableness and sufficiency of Jacksonville's overall training on the constitutional use of force.[54] Jacksonville respectfully suggests that this Court should not consider Plaintiff's cursory argument that Jacksonville's on-point authorities on this issue are "distinguishable."[55] Plaintiff's argument is so conclusory that it is, in effect, simply an abandonment of any argument that Jacksonville's training of its police officers was not constitutionally adequate.[56]

Plaintiff's cursory argument that Jacksonville has not cited cases involving a failure to train police officers on how to handle mentally ill citizens is also demonstrably wrong. Plaintiff's Brief utterly fails to even mention Shaw, which squarely addressed exactly this issue. In Shaw, the officer faced a two-minute tense

---

LEXIS 161100, at *3 n.1 (M.D. Ala. Aug. 26, 2015). Any argument based on "failure to follow policy" should also be disregarded. Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312 (11th Cir. 2016) is legally inapposite and Johnson v. Dixon, 666 F. App'x 828, 831 (11th Cir. 2016) confirms that, even if Edwards had failed to follow policy, which he did not, that does not necessarily indicate "deliberate indifference" by Jacksonville.

[54] Because the pertinent legal issue is whether there is "failure to train" in a particular area, Plaintiff has actually cited cases that support Defendant's position. In Mingo, for example, the Court found training was constitutionally adequate in the "particular area" of the use of four-point restraints on mentally ill individuals due to the existence of written policies and training of the officers. 592 F. App'x at 800-01. And, neither Mingo nor Johnson stands for the proposition that a city must provide extensive and specialized crisis intervention or mental health training to its police officers as a matter of course to avoid a claim of deliberate indifference.

[55] See Doc. 81/pp.34-35.

[56] See Heining v. City of Anniston, 2017 U.S. Dist. LEXIS 157402, at *21 (N.D. Ala. Sep. 26, 2017) (collecting cases on abandonment of claims due to failure to adequately present them).

encounter with a hatchet-wielding, cursing suspect and had "precious little opportunity" to make a mental health diagnosis; the officer knew only that the decedent was "very disorderly and incoherent." The plaintiff did not identify any deficiencies in the city's training on dealing with such "disorderly and incoherent" suspects, and, conclusively, the <u>Shaw</u> court found that the record lacked any evidence to support a need for "further specialized" training in dealing with "mentally ill citizens" when the officer was well-trained in the constitutional use of force and there was no pattern of similar violations to support a finding of deliberate indifference.[57] The exact same is true here, where Edwards had just such extensive, ongoing training in law enforcement practices and Plaintiff does not point to <u>evidence</u> that the need for "further specialized training" in "dealing with mentally ill citizens" was "so obvious" that it amounted to deliberate indifference. Her attempted reliance on "model" mental health policies she thinks Jacksonville should have adopted, and baseless speculation that such policies or further unspecified training would have led Edwards to act differently, as in <u>Shaw</u>, is an insufficient basis to establish municipal liability on a "failure to train claim."

**WHEREFORE, PREMISES CONSIDERED,** Defendant respectfully submits this reply, and for the reasons stated here and in its initial brief on this issue, request this Court to enter summary judgment in its favor on Plaintiff's claim.

---

[57] 241 F. Supp. 3d at 1279 n.29 & 1280 n.30.

Respectfully submitted,

*/s/ C. David Stubbs*
C. David Stubbs (asb-7248-u83c)
Attorney for Defendant
City of Jacksonville

<u>OF COUNSEL:</u>
STUBBS, SILLS & FRYE P.C.
1724 South Quintard Avenue
Post Office Box 2023
Anniston, Alabama 36202
Phone: (256)835-5050
Email: <u>david-ssf@cableone.net</u>

<u>Certificate of Filing and Service</u>

I hereby certify that the following has been served a copy of the foregoing document, on the 11th day of February, 2019, by placing the same in the U.S. mail, postage prepaid and properly addressed; or, if the party being served is a registered participant in the ECF System of the United States District Court for the Northern District of Alabama, by a "Notice of Electronic Filing" pursuant to N.D. Ala. Local Rule 5.4:

U.W. Clemon
U.W. CLEMON, LLC
5202 Mountain Ridge Parkway
Birmingham, AL 35222
clemonu@bellsouth.net
*Attorney for Plaintiff*

Brett D. Watson
MEHRI & SKALET, PLLC
1250 Connecticut Avenue, N.W., Suite 300
Washington, DC 20036
bwatson@findjustice.com
*Attorney for Plaintiff*

Hannah C. Thompson
BIRMINGHAM LAW GROUP
Post Office Box 2264
Birmingham, AL 35201
hthompson@bhamlawgroup.com
*Attorney for Plaintiff*

/s/ *C. David Stubbs*
C. David Stubbs (asb-7248-u83c)