IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **SHIRLEY McBRAYER FLOOD, as Personal representative of the Estate of DAVID DANIEL McBRAYER, deceased,** ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | 1:16-cv-1832-ACA |
| **CITY OF JACKSONVILLE, ALABAMA,** ) ) ) | |
| Defendant. ) | |

**PLAINTIFF'S MOTION FOR ADDITIONAL FINDINGS
AND TO ALTER OR AMEND THE JUDGMENT**

Comes now Plaintiff SHIRLEY McBRAYER FLOOD and moves the Court, pursuant to F.R.Civ.P. 52 (b), to make additional findings to include undisputed facts on the Failure to Train claim, and to alter or amend the judgment accordingly. IN support of the motion, Plaintiff would show the following facts and circumstances.

1. The Court correctly held that to hold a city liable for failure to train under 42 U.S.C. § 1983, a plaintiff must show that he/she has suffered an injury from a constitutional violation. ECF Doc. 92, Memorandum Opinion, p. 8.

2. In her Main Brief, Plaintiff pointed out that

> Jacksonville's deliberate indifference to the rights of mentally ill persons arose long before Officer Edwards killed David. <u>David had an unconditional constitutional right to medical care while he was being</u>

1

> detained in the Jacksonville Jail. *See Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244-45 (1983). The City realized early on that he had a serious mental problem, and should not have been released on his own, *see* ECF No. 76-3, Wineman Dep. pp. 42:1-14, 57:7-21; ECF No. 80-19, PX 7, McBrayer Aff. p. 2, ¶ 3. But it simply failed to give him medical attention during the entirety of his incarceration.

ECF Doc. 81, Plaintiff's Brief in Opposition to the City's Motion for Summary Judgment, pp. 31, 32. (emphasis added.)

    3. Considering the undisputed fact that Plaintiff's intestate received no treatment for his mental illness during his incarceration, and that he had a constitutional right to such treatment, Plaintiff urges the Court to supplement her Memorandum Opinion with the following undisputed facts on the failure to train issue:

    (a) [originally numbered paragraph ("ONP") 44]. Police officers of the City of Jacksonville regularly encounter citizens who are suspected of or suffering from mental illness.

    (b) [ONP 45]. Special police skills, techniques, and abilities are needed to respond to situations involving a person affected by mental illness.

    (c) [ONP 46]. Strong and unrelenting fear of persons, places, things and extremely inappropriate behavior in a given context may be signs of mental illness.

    (d) [ONP 47]. Frustration in new or unforeseen circumstances and inappropriate or aggressive behavior may also suggest mental illness.

    (e) [ONP 50]. There is no crisis intervention team at JPD.

(f) [ONP 53]. Officer Edwards is unaware of any JPD policy on handling persons suffering or suspected to be suffering from mental illness.

(g) [ONP 54]. Officer Edwards routinely encounters persons with suspected or obvious mental problems.

(h) [ONP]. The International Association of Police Chiefs ("IAPC")'s Model Policy on "Responding to Persons Affected by Mental Illness or in Crisis" states, in relevant part:

> Responding to situations involving individuals who officers reasonably believe to be affected by mental illness or in crisis carries potential for violence; requires an officer to make difficult judgments about the mental state and intent of the individual and necessitates the use of special police skills, techniques, and abilities to effectively and appropriately resolve the situation, while avoiding unnecessary violence and potential civil liability. *The goal should be to de-escalate the situation safely for all individuals involved when reasonable, practical, and consistent with established safety priorities. . ..*
> ….
> C. Response to Persons Affected by Mental Illness or in Crisis
> ….
> 2. …. Officers should operate with the understanding that *time is an ally and there is no need to rush or force the situation.*
>
> 3. Move slowly and do not excite the person. *Provide reassurance that the police are there to help* and that the person will be provided with appropriate care.

(i) [originally numbered paragraph 59]. The City of Jacksonville is

> teaching police officers how to use force and the only tool they're giving them is force. And it's kind of like the old adage, if the only tool you have is a hammer, then every problem appears to be a nail. And if we apply that to the Jacksonville Police Department, if the only training regarding interactions with people that are mentally ill is force, then that may be the only skill set

that they have to deal with, and I think that is deficient. It's not consistent with widely accepted police practice regarding training of police officers.

(j) [ONP 60]. It is not recommended that a law enforcement agency release a detainee with a mental problem to his family.

(k) [ONP 61]. The City's expert, Jack Ryan, wrote in 2006:

> a number of cases suggest that agencies must conduct training for dealing with the emotionally disturbed and mentally-ill persons in the context of force. Many agencies have policies related to civil commitments and dealing with the mentally ill, yet few agencies actually conduct training related to those policies and even fewer on tactics and use of force in the context of the emotionally disturbed and the mentally ill.
> …..
> This is an area where agencies need to provide some level of training, particularly as courts begin to recognize such training as generally accepted police practice.

(l) [ONP 62]. Despite knowledge that its officers routinely encounter persons suffering from mental illness, the City made a deliberate choice not to have a policy on responding to persons affected by mental illness.

(m) [ONP 63]. The City's expert, Jack Ryan, recommends that use of force training should include "tactical issues for dealing with the emotionally disturbed or mentally ill."

(n) [ONP 64]. The City's lack of a policy for dealing with the mentally ill is inconsistent with widely accepted police practices regarding policy and training on responding to persons affected by mental illness or in crisis.

(o) [ONP 66]. The City's failure to adopt a policy for handling mentally disturbed persons is particularly unreasonable, in light of Chief Wineman's membership, attendance, and participation in the activities of the International Association of Police Chiefs.

(p) [ONP 67]. The JPD's Policy Manual/Standard Operating Procedures does not instruct officers on the "objective reasonableness" standard adopted by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).

(q) [ONP 68]. Reasonable police officers know that they are increasingly required to respond to and intervene on behalf of citizens who are mentally ill or emotionally unstable.

(r) [ONP 69]. The JPD does not have a policy on the police response to the mentally ill, and it does not provide training to its officers on the handling of mentally ill suspects.

(s) [ONP 70]. Under the totality of the circumstances of the night of November 11, a reasonable police officer would have been trained
- to talk in a calm voice,
- not to yell,
- to use de-escalation techniques,
- to tactically reposition himself, and
- to use other tactics and techniques intended to stabilize the situation and to reduce the immediacy of the threat.

(t) [ONP 71]. A reasonable police officer would not have placed himself in close proximity to David on the night of November 11, knowing that he had a mental problem, that he felt threatened, and that he was armed with a boxcutter.

(u) [ONP 72]. The circumstances surrounding the shooting of David represent (a) a "usual and recurring situation" with which officers are required to deal, (b) the inadequacy of the City's policies and training on the use of force in responding to persons suffering from mental illness, and (c) the deliberate choice of the City not to train officers on such policies.

(v) [ONP 73]. The deliberate choice not to train its officers on handling emotionally and mentally disturbed persons is directly linked to the use of excessive force by Officer Edwards.

The premises considered, Plaintiff urgently requests the Court to supplement her Findings of Facts in the particulars mentioned.

Upon such supplementation. Plaintiff moves to Alter or Amend the Judgment to deny the City of Jacksonville's motion for summary judgment; and set the case for further pretrial and trial proceedings.

Respectfully submitted,

*/s/U.W. Clemon*
U.W. Clemon     Bar # CLE045
U.W. CLEMON, LLC
Rodrick Barge, Esq.
P.O. Box 2365
Birmingham, AL 35201
Telephone    205 506-4524
Facsimile     205 538-5500
e-mail uwclemon1@gmail.com

MEHRI & SKALET, PLLC
1250 Connecticut Avenue NW

Washington, DC 20036
Telephone: 202 822-5100
Facsimile: 202 822-4977

## Certificate of Service

I hereby certify that on this 6th day of May 2019, I have filed this Response to the Defendant's Motion for Summary Judgment with the Clerk of Court utilizing the CM-ECF filing system, which will provide electronic notification to all counsel of record.

*/s/U.W. Clemon*
U.W. Clemon